

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:09CV43-V

COLONIAL TRADING, LLC, )
    Plaintiff, )
)
v. ) **ORDER DENYING**
) **JUDGMENT ON THE PLEADINGS**
BASSET FURNITURE )
INDUSTRIES, INC., )
    Defendant. )
_____ )

**THIS MATTER** is before the Court on Defendant Basset Furniture Industries, Inc.'s ("Basset") Motion for Judgment on the Pleadings (Doc. #10), Plaintiff Colonial Trading, LLC's ("Colonial") Response to Defendant's Motion for Judgment on the Pleadings (Doc. # 14) and Motion for Oral Argument (Doc. #22), and Defendant's Reply (Doc. # 18).

## BACKGROUND

This case arises out of a contract between Colonial and Basset for the sale of furniture. More specifically, a series of purchase orders for infant cribs placed with Colonial in 2008 by Basset was subsequently canceled and the instant dispute regarding the parties' respective contractual obligations followed.

Colonial is a furniture broker who obtains orders from furniture companies, such as Basset, and then contracts with manufacturers to fulfill those orders subject to the customer's specifications. (Compl. ¶ 4.) In addition to acting as a broker for Basset, Colonial claims it "acquired considerable skill and expertise in the design, testing and production of furniture." (Compl. ¶ 5.) Colonial alleges it took an active role in designing furniture which was appealing to and would be ordered by Basset's customers. (Id.) Colonial states it dealt exclusively with

1

the manufacturers (on Basset's behalf) and, therefore, developed long-term and mutually trustworthy relationships with the manufacturers it worked with. (Compl. ¶¶6,7.) Basset used Colonial's services to acquire furniture for its customers "[f]or many years." (Id.)

Beginning July 2008, and continuing for a period of approximately seven (7) months, Basset placed a series of purchase orders with Colonial for furniture. (Compl. ¶ 9.) Colonial accepted these orders and issued invoices in the amount of $991, 745.20. (Id.) Basset later canceled its orders. (Id.) Of the original amount due, Colonial states that Basset has only paid $81,097.60, leaving a balance due of $910,647.60. (Id.) Despite Colonial's repeated demands for payment, Basset has refused to pay. (Compl., ¶ 10.)

During the course of the relationship between Colonial and Basset, two (2) orders of defectively designed and/or manufactured cribs were returned to Colonial's facilities. (Compl. ¶21.) Basset suggests it was required to issue three (3) separate recalls of products procured by Colonial with reference to the defective cribs, Order Nos.: 5446-0504, 5446-0521.[1] (Answer & Countercl., ¶15)

As a result, Basset sought to "charge-back" certain portions of the sum Basset owed Colonial.[2] Although Basset had previously dealt through Colonial, Basset began making payments directly to certain manufacturers to whom payment was due from Colonial. (Compl. ¶13.) Basset's payments to manufacturers totaled $481, 68.82.[3] (Id.)

---

[1] Basset claims that its losses as a result of these recalls continue to grow. (Answer & Countercl., ¶33) Basset requests the right to amend its pleadings to reflect new losses at appropriate intervals and to seek indemnification for claims by third parties. (Id.)

[2] According to Colonial, Basset "unilaterally, and without justification or excuse," charged back what it owed Colonial. (Compl. ¶ 25.) Basset claims it charged back $30,757.11 from the balance due Colonial. (Compl. ¶ 25.) Colonial did not accept this charge-back. (Compl. ¶ 26.) In February/March 2008, Basset claims it charged back $21,476.00. (Compl. ¶ 28.) Colonial later recovered $5,000.00 from the manufacturer. (Id.)

[3] According to Colonial, at least $300,000.00 of this sum was not allocated to any specific account (or specific purchase order) Colonial owed any given manufacturer, making it impossible to credit to Basset. (Compl. ¶ 14)

2

Colonial further complains that, as a result of Basset's conduct, several of the manufacturers who had dealt exclusively with Colonial terminated their relationship with Colonial and began to deal directly with Basset. (Compl. ¶ 34.) Colonial asserts that Basset misrepresented Colonial to certain manufacturers by giving them the impression that Colonial could not or would not make payment. (Compl. ¶¶ 33-38.)

Colonial filed suit in Iredell County Superior Court, North Carolina, and alleged claims for: 1) Breach of Contract; 2) Storage and Disposal Fees, 3) Lost Profits, 4) Charge-backs, 5) Punitive Damages, and 6) Unfair and Deceptive Trade Practices. Basset removed the case to federal court and submitted an Answer & Counterclaim setting forth fifteen (15) defenses and seven (7) counterclaims.[4]

Basset moves for Judgment on the Pleadings on all of Colonial's contractual claims. However, the pleadings reveal that Colonial and Basset dispute what amount (if any) Basset owes Colonial, the cause of any defective products and the party / entity responsible, the appropriateness of any charge-backs and canceled orders, as well as the alleged unfairness or malicious intent of Basset in paying Colonial's manufacturers directly. For the reasons explained herein, Basset's motion will be <u>denied</u>.

## DISCUSSION

### I. Standard of Review

"After the pleadings are closed ... a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). The Court must accept the allegations in the Complaint and make any

---

[4] Defendant asserts numerous Counterclaims: 1) Breach of Contract (multiple theories); 2) Breach of the Covenant of Good Faith and Fair Dealing; 3) Tortious Interference with Contract; 4) Breach of Contract / Course of Dealing / Charge-backs; 5) Breach of Contract / Course of Dealing / Time Period; 6) Breach of Contract / Course of Dealing / Quality; and 7) Breach of Express and Implied Warranties.

3

inferences in favor of the Plaintiff, unless they represent "unwarranted inferences, unreasonable conclusions, or arguments," E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000), or "contradict matters properly subject to judicial notice or by exhibit," Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002). In determining a motion for judgment on the pleadings, the court "may consider documents incorporated by reference in the pleadings." Parks v. Alteon, Inc., 161 F.Supp. 2d 645, 649 n. 1 (M.D.N.C. 2001); see also Fed. R. Civ. P 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (documents attached to the answer are part of the pleadings for Rule 12(c) purposes where the documents are central to the plaintiff's claims and the authenticity is not challenged). The factual allegations of the answer are taken as true to the extent "they have not been denied or do not conflict with the complaint." Pledger v. North Carolina Dep't of Health & Human Servs., 7 F.Supp.2d 705, 707 (E.D.N.C. 1998).

When deciding a Rule 12(c) motion for judgment on the pleadings, the court must apply the same standard that is applied when ruling on a motion to dismiss pursuant to Rule 12(b)(6). Burbach Broad. Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002); Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, Plaintiff's allegations must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quotation omitted).

A complaint should be dismissed when its claims only permit the Court to infer "the mere possibility of misconduct" but are not sufficient to show that the requested relief is "plausible." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). In considering the plausibility of a claim, the Court must disregard conclusory statements unsupported by factual allegations. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. at 1951.

## II. Plaintiff's Breach of Contract Claim

To survive a motion for judgment on the pleadings for breach of contract, a plaintiff must allege sufficient facts to show "(1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 530 S.E.2d 838, 843 (N.C. App. 2000). A breach of contract is only actionable if a material breach occurs – one that "substantially defeat[s] the purpose of the agreement" or goes "to the very heart of the agreement," or can be "characterized as a substantial failure to perform." Fletcher v. Fletcher, 474 S.E.2d 802, 807-08 (N.C. App. 1996) (*internal quotations omitted*).

Taking the allegations in the Complaint in the light most favorable to Colonial, properly considering Basset's Answer and Counterclaims, Colonial's Reply, and properly attached exhibits, Basset's Motion for Judgment on the Pleadings must be denied. Colonial's Complaint easily satisfies the Twombley / Iqbal standard in that Colonial sufficiently alleges facts to support a breach of contract claim with the allegation that Basset placed orders for furniture and then failed to pay for those orders. (Reply, 4-5) There is nothing speculative about Colonial's contractual claims.[5] Rather, Colonial's breach of contract theory is entirely plausible given that

---

[5] Colonial's claim that Basset's "primary purpose" was to place Colonial in a "stressed financial situation" is an exception. (Compl., ¶32)

the legal effect of the parties' words and actions must also be considered in conjunction with the writings. (Reply at 5, "Defendant's Exhibit 1 represents *a portion* of the Contract between the parties) (Answer and Reply, ¶3).

To the extent Bassett asserts its non-payment is justified, the pleadings do not, as a matter of law, compel that conclusion because the contours of the parties' agreement are yet to be determined. Under Article 2 of the UCC, and the corresponding North Carolina Commercial Code, "a contract of sale may be made by any mode of expression of agreement, oral, written, conduct, or a combination thereof." HAWKLAND §2-204:1 (2009); N.C. Gen. Stat. §25-2-204(1) - (3); Insteel Wire Products Co. v. Dywidag Syss. Int'l USA, Inc., 2009 WL 2253198 (M.D.N.C. July 28, 2009). Colonial's Complaint refers to "placed orders for furniture" made by Basset and does not allege that any single written agreement governed the relationship between the parties. (Compl.,¶9) According to Basset, the parties' business relationship was governed by "a number of written documents, including written agreements, purchase orders, and other writings…." (Answer & Countercl., ¶¶3, 4) Colonial concedes the existence of multiple writings and alleges that "verbal agreements also existed between the parties." (Reply to Answer & Countercl., ¶3) While the effect of prior dealings is disputed, Colonial and Basset both recognize an established course of dealing that also influenced their business relationship. (Answer & Countercl., ¶¶ 6-8; Reply to Countercl. ¶¶6-8)

According to Bassett, Colonial's breach of contract claim must fail because its own material breach of contract preceded Basset's nonpayment, thereby discharging Basset from its remaining duties under the contract. (Doc. # 11,14). See Millis Constr. Co. v. Fairfield Sapphire Valley, Inc., 358 S.E.2d 566, 569-70 (N.C. App. 1987) (Under North Carolina law, when one party to a contract breaches it, the non-breaching party is discharged from his

remaining obligations under the contract.); Lake Mary L.P. v. Johnston, 551 N.C. App. 546, 555 (N.C. App. 2001) ("if either party to a contract commits a material breach of the contract, the other party should be excused from obligation to perform further...") Indeed, Colonial arguably breached a material term of the written contract when it delivered "two orders of defectively designed and / or manufactured cribs" to Basset.[6] (Compl. ¶ 21.) Colonial admits that two (2) orders of defective cribs were delivered to Basset, but argues that responsibility and liability of the defects rests with Basset and / or the actual manufacturers. (Id.)

In support of its motion, Basset relies solely on the language within the sample purchase order and contends that the Court may not accept any of Colonial's allegations that may be contrary to the documentary evidence attached to its Answer & Counterclaim. Colonial does not dispute the validity of the alleged written contract (i.e., purchase order), but argues instead that the parties' agreement was defined by "course of dealing, verbal agreement, or otherwise." (Doc. # 8, 3.) Thus, the exact terms of the parties' contractual arrangement, whether the parties' written contract was modified in any material way, the effect of any additional terms, and whether additional consideration supported such a modification each present factual and legal questions that the pleadings simply cannot answer. Because these matters potentially affect the

---

[6] In the Purchase Order, Colonial agrees to "warrant the fitness and usability of the materials to be in compliance with the terms and conditions of Basset's purchase orders and to conform to Basset's quality standards. (Doc. #7-1, 9.) The Purchase Order between Colonial and Basset states, "PRODUCTION OF THIS ORDER MUST MEET OR EXCEED SPECIFICATIONS SUBMITTED BY BASSET FURNITURE AND MUST BE 100% FREE OF MANUFACTURING DEFECTS AND RAW MATERIAL DEFECTS. (capitalization font in original) (Id. at 13.) Furthermore, Colonial agrees to be "charged back for defective products returned to Basset from the customer or for any allowance... (Id. at 9,10.) Bassett thus contends that because Colonial warranted the quality of goods it delivered to Basset and proceeded to deliver two (2) defective orders of cribs, Basset was discharged from its duties under the contract when it properly revoked acceptance of the cribs. The written contract between Colonial and Basset also purportedly authorized Basset to "cancel any or all shipments at vendor's expense" if the vendor failed to meet the standards and to reject any defective furniture that failed to meet the standards established by Basset and third-party consumer protection organizations. (Doc. # 7-1,11,13.)

terms of the parties' agreement, it precludes judgment on the pleadings in favor of Bassett on Colonial's Breach of Contract Claim.

### III.     Plaintiff's Remaining Claims / Defendant's Counterclaims

Similarly, because Plaintiff's other causes of action as well as Defendant's Counterclaims stem from the nature of the parties' business relationship and attendant contractual obligations, judgment on the pleadings is likewise inappropriate on the remaining issues.

## CONCLUSION

**THEREFORE**, for the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is **DENIED** and Plaintiff's Motion for Oral Argument is **DENIED as moot.**

This the 6th day of December, 2010.

*/s/ Richard L. Voorhees*
_____
RICHARD L. VOORHEES